WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Christian E.,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-01278-PHX-SHD

**ORDER**

Claimant Christian E. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA" or "Commissioner") final decision denying benefits. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **vacated and remanded** for further administrative proceedings.

## I. BACKGROUND

### A. Factual Overview

Claimant was 57 years old on his alleged disability onset date of October 1, 2022. (Administrative Record ("AR") 16, 53.) He has a 10th grade education and has past relevant work as a security guard. (AR 24, 35.) Claimant filed an application for supplemental security income on October 24, 2022. (AR 165–66.) The claim was initially denied on March 22, 2023, and again upon reconsideration on August 2, 2023. (AR 16.) A telephonic hearing was held on May 29, 2024, and an unfavorable decision was issued by the ALJ on July 12, 2024. (AR 16–30.) The Appeals Council denied Claimant's request

[1] As a matter of practice, Claimant is referred to as such and, at most, by his first name and last initial to protect his privacy.

for review on February 24, 2025. (AR 1–3.) Claimant then appealed to this Court. (Doc. 1.)

**B. The SSA's Five-Step Evaluation Process**

To qualify for Social Security Disability Insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to "any medically determinable physical or mental impairment." *Id.* § 423(d)(1)(A). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2)(A). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to

Step Four. *Id.* §§ 404.1520(a)(4)(iii), (e). The claimant's RFC is his ability perform physical and mental work activities "despite [his] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[his] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), (e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

**C. The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that Claimant had not engaged in substantial gainful activity since October 1, 2022. (AR 19.)

At Step Two, the ALJ determined that Claimant had severe impairments of degenerative changes of the lumbar spine, prostate cancer with metastasis to spine, pelvis and femur, and obesity. (*Id.*)

At Step Three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.*)

The ALJ then found that Claimant had the following RFC:

> [Claimant can] perform light work as defined in 20 C.F.R. § 404.1567(b) except he should never climb ropes, ladders or scaffolds. He could occasionally climb ramps and stairs, crawl, balance, stoop, kneel, and crouch. He should avoid concentrated exposure to unprotected heights and moving and dangerous machinery.

(AR 20.)

At Step Four, the ALJ found that Claimant could perform past relevant work as a security guard, based on the RFC formulation and the testimony of the vocational expert, because security guard work does not require the performance of activities precluded by the Claimant's RFC. (AR 24.) Accordingly, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from the alleged onset date of October 1, 2022 through the date of the decision. (AR 25.)

**D. Briefing on Appeal**

Claimant argues that the ALJ committed materially harmful error by (1) rejecting the disabling portions of the assessments completed by Claimant's treating hematologist/oncologist, Justin Goldfarb, DO, Dr. Goldfarb's nurse practitioner Nichole Lee, N.P., and Claimant's treating urology physician assistant, Austin Bacong, P.A.-C., without providing sufficient explanation, and (2) rejecting Claimant's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record. (Doc. 10 at 1–2.) He also argues that the ALJ's failure to consider a non-binding Program Operations Manual System (POMS) rule for compassionate allowance—which the Commissioner concedes—warrants remand for an award of benefits under the credit-as-true standard rather than remand for further administrative proceedings. (*Id.* at 11–12, 22–23.)

The Commissioner disputes that the ALJ committed error in evaluating Claimant's treating providers or in discounting Claimant's symptom testimony. (Doc. 11 at 5–13.) And although he concedes harmful error based on the ALJ's failure to consider whether to grant Claimant a compassionate allowance under POMS DI 23022.282, he argues that remand for further proceedings is the only appropriate remedy due to the discretionary

nature of relief under the POMS. (*Id.* at 3–5.) In the Reply Brief, Claimant emphasizes his request for remand for an award of benefits, rather than further administrative proceedings, based on both the error admitted by the Commissioner and those that the Commissioner disputes. (*See generally* Doc. 12.)

**II. LEGAL STANDARD**

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels*, 874 F.3d at 654 (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Courts must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Revels*, 874 F.3d at 654 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. Finally, only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. DISCUSSION

### A. Remedy for Failure to Consider POMS Compassionate Allowance

The Commissioner concedes error with respect to the ALJ's failure to consider POMS DI 23022.282. If I find that the appropriate remedy for that error is remand for an award of benefits, I need not reach the other issues Claimant raises on this appeal. Accordingly, I address this issue first.

The Commissioner argues that remand for further proceedings is the only remedy available for the ALJ's failure to consider the pertinent POMS. The Commissioner relies primarily on the discretionary nature of a compassionate allowance for prostate cancer, as reflected in the pertinent POMS itself: "Adjudicators may, at their discretion, use the Medical Evidence of Record or the listings suggested to evaluate the claim [for compassionate allowance]. However, the decision to allow or deny the claim rests with the adjudicator." (Doc. 11 at 4 (quoting POMS DI 23022.282, available at https://perma.cc/DP5J-8NQZ).) The Commissioner further argues that the medical record is ambiguous as to whether the pertinent POMS would even apply. (*Id.* at 4–5.)

For his part, Claimant acknowledges that the POMS are not strictly binding on ALJs, (Doc. 10 at 11; Doc. 12 at 3), but nonetheless argues that there would be "no useful purpose in remanding [Claimant's] case to the agency for the fifth time" given undisputed metastasis of his cancer and the SSA's multiple opportunities—and refusals—to grant him a compassionate allowance under the pertinent POMS, (Doc. 10 at 12; *see generally* Doc. 12).

Neither party cites any caselaw bearing on the issue at hand: whether an ALJ's failure to consider a POMS section may warrant a remand for award of benefits. The Ninth Circuit's commentary about POMS, however, is instructive. In *Lockwood v. Commissioner*, that court rejected a claimant's argument that the ALJ failed to apply a POMS provision regarding her age, explaining that "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." 616 F.3d 1068, 1073 (9th Cir. 2010); *see also Carillo-Yeras v. Astrue*, 671 F.3d

731, 735 (9th Cir. 2011) (declining to find that ALJ erred "simply by failing to make an explicit finding of diligence" as required by POMS DI 27505.005C, because that POMS was not enforceable). Similarly, in *Moore v. Apfel*, the Ninth Circuit rejected a claimant's arguments based on SSA's failure to comply with a separate SSA manual—HALLEX—because that manual "does not carry the force and effect of law." 216 F.3d 864, 868 (9th Cir. 2000).

If the POMS does not have the force of law, it would be illogical for a claimant to be entitled to a remand for the award of benefits based on a failure to comply with the POMS. Although the Commissioner has conceded error here based on the POMS and has agreed to remand for further proceedings, there is no basis in the law for me to grant any relief beyond that. Accordingly, I reject Claimant's first argument in support of remand for an award for benefits. I turn next to his arguments that the ALJ erred in evaluating his treating medical providers' opinions and in discounting Claimant's symptom testimony.

**B. Treating Medical Professionals' Opinions**

Claimant argues that the ALJ improperly evaluated the medical opinion evidence from three separate medical providers: Justin Goldfarb, DO, nurse practitioner Nichole Lee, N.P., and a urology physician assistant, Austin Bacong, P.A.-C. Although Claimant's argument lumps all three providers together, (Doc. 10 at 12–17), I will address the ALJ's evaluation of each provider separately.

**1. Legal Standard**

Under the regulations governing applications filed on or after March 27, 2017, treating or examining physician opinions are no longer entitled to deference over other medical sources. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). Thus, an ALJ must evaluate every medical source—treating and non-treating—based on several factors, the "most important" of which are "supportability" and "consistency." *Id.* at 791 (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence," and consistency "means the extent to which a medical opinion is consistent with the evidence from other medical

sources and nonmedical sources in the claim." *Id.* at 791–92 (citation modified).

An ALJ "must articulate how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (citation modified). Under the current regulations, "the decision to discredit any medical opinion[] must simply be supported by substantial evidence." *Id.* at 787. Although the standard is deferential, the ALJ's explanation must nonetheless permit review; therefore, a conclusory finding is insufficient because "even if the ALJ had given facially legitimate reasons . . . , the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006); *see also Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020) (holding that "boilerplate statement[s]" were insufficient and that error is not harmless where reasoning does not permit meaningful review).

**2. Dr. Goldfarb's Opinion**

Dr. Goldfarb completed an assessment of Claimant's work-related limitations based on his stage 4 cancer, and found several physical limitations. For example, he found that Claimant could sit for only two hours and stand/walk for only two hours in an eight-hour day, and would have to rest every 21 to 45 minutes. (AR 765.) Dr. Goldfarb also found that Claimant could not sustain attendance and would miss two to three days of work per month. (AR 766.)

The ALJ found Dr. Goldfarb's assessment unpersuasive:

> On July 18, 2023, Justin Goldfarb, DO, a hematologist, opined that the claimant could sit, stand, and walk for two hours, lift or carry less than ten pounds, and was limited from zero to 20 percent as to use of his hands, bending, stooping, and reaching [(AR 765–66)]. This statement was inconsistent with the findings made by Dr. Goldfarb on November 16, 2023, when the claimant denied back pain and gave a negative history as to neurological, musculoskeletal, and psychological complaints. The neurological and psychological exams performed by Dr. Goldfarb on that date were negative [(AR 1033–34)]. No musculoskeletal examination was performed by Dr. Goldfarb. Dr. Goldfarb's statement of July 18, 2023, was

> totally opposite to the exam results of Dr. McCabe on September 13, 2023 [(AR 1335)] and the consistent history the claimant provided Dr. La Towsky [sic] from June 26, 2023 through September 13, 2023 [AR 1232–1258.)]. The statement of Dr. Goldfarb was unsupported by his own notes and the longitudinal record and lacked persuasiveness.

(AR 24.)

Claimant argues that the ALJ failed to show his work "when rejecting the portions of the assessment[] that dealt with the nonexertional aspects of [Claimant's] conditions, that is, the fatigue and other effects of stage 4 cancer and chemotherapy medications that kept [Claimant] from sustaining full-time work activity." (Doc. 10 at 14; *see also id.* at 15–16 (premising argument on Claimant's "fatigue and side effects of chemotherapy and pain medications [that kept him from sustaining work at a full-time level").)

Claimant's argument fails because it is based on an incorrect premise. In his assessment, Dr. Goldfarb focused on limitations associated with physical restrictions, (AR 765), declined to find that Claimant's impairments "result in, cause, or contribute to headaches *or mental fatigue*," and further declined to describe any mental impairments, instead writing "N/A." (AR 766 (emphasis added)). Furthermore, there is nothing in the assessment about Claimant's side effects from chemotherapy or his pain medications. (*See* AR 765–66.)

Courts need only consider the arguments made by a party challenging an ALJ's decision. *Cf. Burrell v. Colvin*, 775 F.3d 1133, 1137 n.2 (9th Cir. 2014) (a claimant waives an argument by failing to raise it in a district court). Here Claimant argues that the ALJ failed to properly evaluate Dr. Goldfarb's findings concerning Claimant's fatigue and treatment side effects for supportability and consistency. But Dr. Goldfarb made no such findings. Accordingly, the ALJ could not have evaluated them—improperly or otherwise.

**3. NP Lee's Opinion**

NP Lee completed an assessment of Claimant's work-related limitations based on his "Stage 4 Prostate Cancer – Metastatic To Bone," finding physical limitations similar to those found by Dr. Goldfarb, (AR 1348), and also finding that Claimant's "impairments

result in, cause, or contribute to headaches or mental fatigue," (AR 1349). NP Lee, however, indicated that the headaches or mental fatigue would occur only "2-3 times per month" and would only require rest for "0 – 20 minutes at a time." (AR 1349.) Like Dr. Goldfarb's assessment, NP Lee made no findings concerning Claimant's side effects from treatment or medications. (*See* AR 1348–49.)

The ALJ found NP Lee's assessment unpersuasive, and with respect to the neurological findings that would encompass fatigue and side effects, found the following:

> [NP Lee's assessment] was inconsistent with the virtual visit Ms. Lee had with the claimant on January 29, 2024 when h [sic] reported that he was stable and doing fairly well [(AR 946)]. The claimant denied neurological and musculoskeletal symptoms or complaints. Her statement was also inconsistent with her examination of the claimant on July 31, 2023 when . . . his neurological, psychological, and musculoskeletal examinations were normal [(AR 1163)]. . . . Her statement was also inconsistent with the examination performed by Christopher J. McCabe, M.D., on September 13, 2023, where the neurological, back, and psychological exams were normal . . . without any focal neurological deficit [(AR 1335)]. The statement of Ms. Lee was unsupported by her own records and the longitudinal record and lacked persuasiveness.

(AR 23–24.)

Claimant does not make any arguments specifically challenging the ALJ's analysis of NP Lee's finding and instead only contends that "the ALJ did not address the supportability or consistency of the providers' assessments of [Claimant's] inability to sustain work because of symptoms of stage 4 cancer such as fatigue." (Doc. 10 at 14.) Because NP Lee made findings with respect to Claimant's fatigue (unlike Dr. Goldfarb), I will assess the ALJ's supportability and consistency analysis pertaining to that finding for error. And because the ALJ adequately evaluated the supportability and consistency of NP Lee's assessment, Claimant's argument fails.

a. <u>Supportability</u>

With respect to supportability, I first note that NP Lee gave her opinion on a checkbox form, providing no explanation for her findings other than checking boxes stating that she "provided treatment or supervised treatment to the patient," "considered and/or

reviewed [her] treatment notes, records from other providers, radiographic reports, laboratory reports, patient's response to treatment, and/or other: ____, " and that the "limitations result from objective, clinical, or diagnostic findings which have been documented either by [her], or elsewhere in the patient's medical records." (AR 1349.) Accordingly, there was no support provided by NP Lee for her medical opinions, and nothing for the ALJ to assess.

The Ninth Circuit has "accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation." *Kitchen v. Kijakazi*, 82 F.4th 732, 740–41 (9th Cir. 2023) (citing *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020), which held that an ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions"); *see also Luft v. O'Malley*, 2024 WL 4144086, at *1 (9th Cir. Sept. 11, 2024) (per curiam) ("Lohmann did not adequately support her opinion. Instead, she expressed it on a check-box form without providing meaningful explanation, which undercuts her opinion's persuasive value." (citation omitted)); *Sarah B. v. Comm'r of Soc. Sec.*, 2024 WL 2832887, at *3 (W.D. Wash. June 4, 2024) (ALJ's decision to discount medical source opinion as unsupported was not error where the medical source "did not provide a rationale for her [checkbox] opinion"). For this reason alone, the ALJ did not err in his supportability analysis of NP Lee's checkbox form.

Additionally, even accepting NP Lee's checkbox explanation that she considered her treatment notes in reaching her conclusions, the ALJ explained that those same notes did not support her conclusions because they reflected that claimant denied neurological symptoms or complaints and had normal neurological findings. (AR 23 (citing AR 946, AR 1163).) Claimant does not meaningfully engage with the ALJ's analysis. His argument therefore fails.

b. <u>Consistency</u>

Similarly, Claimant does not substantively engage with the ALJ's consistency analysis, in which he explained that NP Lee's findings conflicted with the examination performed by Dr. McCabe, who found normal results after conducting neurological and

psychological exams and the lack of any focal neurological deficit. (AR 24 (citing AR 1335).) Rather, he contends generally that NP Lee's assessment was consistent with Dr. Goldfarb's and PA Bacong's assessments "and with the records as a whole." (Doc. 10 at 15.) But even if there is evidence in the record supporting NP Lee's findings, it is the ALJ, not the reviewing court, who must resolve conflicts in the medical evidence. *See, e.g.*, *Andrews*, 53 F.3d at 1039 ("The ALJ is responsible for . . . resolving conflicts in medical testimony, and for resolving ambiguities." (citing *Magallanes*, 881 F.2d at 750)). Thus, where "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *accord Batson*, 359 F.3d at 1198. Although Claimant may disagree with the ALJ's consistency analysis, it is supported by substantial evidence and his argument fails.

**4. PA Bacong's Opinion**

Like Dr. Goldfarb and NP Lee, PA Bacong completed a checkbox form, but unlike those other providers, he provided more information in his form. (*See* AR 1350–51.) Specifically, and as relevant here, he found that Claimant suffered "pain [and] burning in prostate, back and legs," was limited by pain or fatigue to a severe degree, and suffered moderately severe side effects due to his medications, including "joint pain, fatigue, [and] headache." (*Id.*)

The ALJ found PA Bacong's opinion unpersuasive:

> This provider's treatment notes primarily reflected treatment of the claimant's incomplete bladder emptying problem which was treated with weekly catheter replacements [(AR 1232–58)]. The opinion was inconsistent with his own clinic's treatment notes [(AR 767–1231, 1251, 1326)]. On November 6, 2023, the claimant denied back pain and provided a negative history as to neurological, musculoskeletal, and psychological complaints [(AR 846)]. The neurological, musculoskeletal and psychological examinations that day were negative. On January 29, 2024, a virtual visit, the claimant reported that he was stable and doing well and he denied neurological or musculoskeletal symptoms [(AR 946)]. This opinion was also inconsistent with the repeated denials of the claimant to Aaron W. LaTowsky, M.D., of back pain, joint pain, muscle pain, numbness, tremors

> and dizziness from June 26, 2023 through November 9, 2023 [(AR 1232–58)]. This opinion was inconsistent with the evidence that showed that his cancer was stable, that his pain was managed with medication, and his bladder issue was handled with a catheter. The evidence as a whole did not support the conclusion indicated by this provider.

(AR 23.)

As with the other treating providers, Claimant does not make any specific arguments as to deficiencies in the ALJ's analysis. As explained below, the ALJ did not err in finding PA Bacong's opinion unpersuasive.

a. <u>Supportability</u>

The ALJ properly considered the supportability of PA Bacong's opinion for the same reasons as set forth *supra* Section III(B)(3)(a) concerning NP Lee's opinion. PA Bacong used a checkbox form that identified no support for his opinions other than that he "provided or supervised treatment to the patient," "considered and/or reviewed [his] treatment notes, records from other providers, radiographic reports, laboratory reports, patient's response to treatment, and/or other: ____, " and that the "limitations result from objective, clinical, or diagnostic findings which have been documented either by [him], or elsewhere in the patient's medical records." (AR 1351.) This checkbox form provides no support, and the ALJ did not err in discounting it. *See Kitchen*, 82 F.4th at 740–41.

And the ALJ also set forth specific reasons why PA Bacong's opinion concerning Claimant's pain and fatigue was not supported by the records from his practice. (AR 23 (citing AR 846, 946, 1232–58, 1251, 1326).) Claimant does not dispute that the cited records contradict PA Bacong's assessment and therefore cannot establish that the ALJ erred in evaluating the supportability of PA Bacong's opinion.

b. <u>Consistency</u>

In addition to explaining that PA Bacong's opinion was not consistent with his own practice's records, the ALJ also explained that the opinion conflicted with Claimant's repeated denials of pain and other symptoms to Dr. LaTowsky, over a four month period in 2023, as well as other evidence in the record showing that Claimant's pain was managed

with medication. (AR 23 (citing AR 1232–58).) Claimant does not substantively engage with this consistency analysis, and to the extent he disagrees with it, that is not a basis for reversal where the ALJ showed his work and that work confirms that there is substantial evidence supporting his conclusions.

**C. Claimant's Symptom Testimony**

Claimant's final basis for requesting remand for an award of benefits is that the ALJ improperly rejected his symptom testimony.

**1. Legal Standard**

If the ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels*, 874 F.3d at 655 (citation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation omitted). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024).

An ALJ, however, is "not required to believe every allegation of disabling pain." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quotation marks omitted). "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* And an ALJ may rely on objective medical evidence that is inconsistent with a claimant's symptom testimony to discount that testimony. *Id.* at 498 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.").

**2. Analysis**

Claimant first argues that the ALJ improperly discounted his testimony concerning

his back pain. (Doc. 10 at 19–20.) At the hearing, Claimant testified he had back pain, tailbone pain, and "burning pain where my prostate is, in the middle of the night that wakes me up." (AR 40.) The ALJ addressed Claimant's back pain at length, discounting its severity and finding that Claimant maintained "a substantial residual ability to stand, walk, sit, lift and carry despite his allegations" of pain based on the following: (1) lumbar spine radiotherapy in October 2022 that "improved his pain," (AR 21 (citing AR 886)); (2) reports in 2023 that Claimant's "back pain had significantly improved," (AR 22 (citing AR 2180)); (3) unremarkable examinations that showed, among other things, no tenderness, (AR 22 (citing AR 334, 347, 365, 685, 1270, 1326, 1335, 1338, 1344)); and (4) in March 2024, Claimant was found to be in "fair condition with stable generalized pain" at an unremarkable examination, (AR 22 (citing AR 887)). The ALJ's reasons for discounting Claimant's back pain symptom testimony are specific, clear, and convincing.

Claimant generally and conclusorily argues that the ALJ's analysis was insufficient and that the ALJ cherry-picked evidence to support his conclusion, but that argument fails given the specificity and breadth of the records cited, which show improvement. *See Smartt*, 53 F.4th at 500 (affirming discounting of symptom testimony based on the claimant's "self-reported and objective improvement"). Additionally, Claimant cites to records from 2022, early in Claimant's treatment, to suggest that Claimant's pain "returned" after initially improving. (Doc. 10 at 19 (citing AR 2411–12 (June 2022 records))). But it is unclear how records predating the ALJ's cited records showing both improvement and stable generalized pain support his argument.

Claimant next argues that the ALJ improperly discounted his testimony about his fecal incontinence and fatigue, the latter of which impacted his showering frequency. (Doc. 10 at 21.) As for fecal incontinence, he testified that he did not "know when [he's] going number two sometimes," defecating without knowing why and in an uncontrollable manner, and without knowing "when it's happening until [he smells] it." (AR 41.) He found it hard to leave the house because he did not know when he needed to defecate, (AR 42), and when he did leave home, he kept adult diapers, (AR 47). He also explained that

he suffered incontinence "three to four times a week" and that it caused him to miss work. (AR 44.) The ALJ discounted this testimony because Claimant "reported that [the incontinence] had improved" by January 2023, (AR 22 (citing AR 2178)), and "repeatedly denied having bowel incontinence" across six separate treatment records, (AR 22 (citing AR 1292, 1296, 1304, 1308, 1312, 1316)), suggesting that the record evidence was "not consistent with his testimony that his fecal incontinence occurs three to four times a week and kept him from leaving his house," (AR 22).

With respect to fatigue, Claimant testified that he could barely perform his current job as a security guard for more than 15 or 16 hours per week, (AR 39 ("I can barely do this now, what I'm doing.")),[2] was "wiped out" after each shift, (AR 42), and when he was not working he stayed home and had to nap for between two and four hours, (AR 42–43). He also testified that his wife did all the cooking and shopping because he was too tired. (AR 43, 45.) Finally, he testified that he only showered once per week because he was "tired all the time" and "wiped out." (AR 43.) The ALJ discounted the severity of Claimant's fatigue testimony because "the claimant did not report to his doctor's [sic] that he was taking naps for hours" and, despite his alleged once-a-week showering, "he was able to hold a job and examinations did not indicate he is malodorous which one would expect." (AR 22.)

While Claimant disagrees with the ALJ's reasons for discounting his incontinence and fatigue testimony, and points to his recitation of the facts based on his characterization of the medical records, (Doc. 10 at 21), he has not shown that the ALJ failed to provide specific, clear, and convincing reasons to his discount testimony. Here, the ALJ properly relied on the improvement of Claimant's incontinence as reflected in medical records, as well as medical records inconsistent with his incontinence testimony, to discount that testimony. *See Smartt*, 53 F.4th at 498, 500. Additionally, the ALJ properly discounted

---

[2] Claimant also testified that he considered and discussed with his wife the income limit for disability eligibility when limiting his work to 16 hours a week. (AR 39.) Because the ALJ did not rely on this statement to discount Claimant's symptom testimony, I do not consider it in evaluating this appeal. *See Garrison*, 759 F.3d at 1010 (a court "may not affirm the ALJ on a ground upon which he did not rely").

the fatigue testimony, including Claimant's statement about his showering, based on his employment and the absence of any records supporting the existence of objective facts—namely, that he took naps for hours and was malodorous. Simply put, the ALJ did not err in discounting Claimant's symptom testimony.

## IV. CONCLUSION

The Commissioner conceded harmful error with respect to the ALJ's failure to consider POMS DI 23022.282. At best, that error warrants remand for further administrative proceedings—as the Commissioner has conceded—given that the POMS are not judicially enforceable and are discretionary in nature. The ALJ did not err in evaluating Claimant's treating medical providers' opinions, nor did the ALJ improperly discount Claimant's symptom testimony concerning his back pain, incontinence, or fatigue.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **vacated and remanded** for further administrative proceedings.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter final judgment consistent with this Order and close this case.

Dated this 4th day of September, 2026.

Honorable Sharad H. Desai
United States District Judge